OGG et al. v. DIES et al.     (No. 6973.)

(Court of Civil Appeals of Texas. Galveston. April 20, 1915.)

1. COUNTIES ⬅182—BONDS — SALE — VALIDITY.

A county is not prohibited by statute from selling road construction bonds to contractors, but the statute forbids the sale of bonds for less than par and accrued interest, and where a contractor bids for both the work and bonds, but the bid for the work is not on a cash basis, but at an amount sufficiently above what the work could be done for cash to recoup him for part of the amount for which he agrees to pay for the bonds, the bids may not be accepted, for the method of selling the bonds is an evasion of the statute.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 285; Dec. Dig. ⬅182.]

2. COUNTIES ⬅182—BONDS—SALE — VALIDITY.

A road district authorized by vote the issuance of road construction bonds. Original specifications for bids for the road work declared that the bidders must accept bonds in payment. Subsequently, the bidders were notified that their bids for the work should be made on a cash basis, and that bids for the bonds should be made on a separate form. Bidders for the work were not required to bid for bonds. A successful bidder for the work made a separate bid for bonds on the understanding that the latter bid was optional. The bid for the work was low, and the bid for the bonds, to be issued in installments, was for not less than par and accrued interest. The bidder was required to pay into the county treasury the par value and accrued interest on each installment delivered. Held, that the sale of the bonds and the letting of the contract for the work did not evade the law forbidding sale of bonds for less than par and accrued interest.

[Ed. Note.—For other cases, see. Counties, Cent. Dig. § 285; Dec. Dig. ⬅182.]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Action by J. J. Ogg and others against W. W. Dies and others. From an order dissolv-

ing a temporary injunction, plaintiffs appeal. Affirmed.

Coe & Coe, of Kountze, and R. L. Durham and McDowell & Blain, all of Beaumont, for appellants. Singleton & Nall, of Kountze, for appellees.

PLEASANTS, C. J. This appeal is from an order of the district judge of Hardin county, made in vacation, dissolving a temporary injunction theretofore granted by him in a suit for injunction brought by appellants, who are resident property taxpayers of road precinct No. 2 of Hardin county, against W. W. Dies, county judge, J. S. Jackson, G. A. Anderson, J. N. Newman, and Jode Flowers, county commissioners of said county, and Hanson & Sons, a corporation, to restrain the sale by said county judge and commissioners to Hanson & Sons of bonds issued by said commissioners' court for the construction of roads in said road district, and to restrain the execution by said county officials of a contract with said Hanson & Sons for the construction of said roads.

Plaintiffs' petition, after alleging that bonds in the sum of $125,000 for the purpose of constructing and maintaining macadamized roads in said district were authorized by a vote of the taxpayers of the district at an election for that purpose, duly and legally held on May 14, 1914, alleges, in substance, as follows: That thereafter the commissioners' court, on the 8th day of June, at a regular session, authorized the issuing of said bonds, and entered an order to the effect that J. S. Jackson, defendant, be authorized to take and have charge of said bonds pending their investigation by the Attorney General, and that upon their approval, he, the said Jackson, should have authority to negotiate and sell and receive for the county the proceeds thereof; that said J. S. Jackson was not under bond, and was not required by said order of court to give bond to account for the money received by him from the sale of said bond; that the said Jackson, acting with consent and approbation of the other members of the commissioners' court, had contracted to sell to the defendants Hanson & Sons the entire issue of said bonds, in such manner as the amount actually to be received by the county therefor would be greatly less than the par value of said bonds; that the said Jackson and the other members of said court are attempting to contract the building of roads in said district prior to the sale of said bonds, and that they required all persons bidding upon said work to also bid for the purchase of said bonds.

The plaintiffs prayed for a temporary injunction, restraining the said Jackson and the other members of said court from disposing of said bonds for less than their par value, and that they be further restrained from contracting for the building of the said roads until said bonds were disposed of, and the money therefor placed in the treasury of

said county. The temporary injunction was granted as prayed for, on the 27th day of December, 1914, and the defendants filed an answer and motion to dissolve on the 2d day of January, 1915, which motion was heard on the 18th day of January, 1915, in chambers.

The defendants, in answering said petition, admitted that the bonds had been voted as alleged, and that the defendant Jackson had been made the custodian of said bonds as alleged, but stated that the order granting him authority to negotiate and sell and receive the proceeds of said bonds had, in effect, been revoked and that the bonds were on deposit with the county treasurer, and that all sales of said bonds would be made in the manner required by law. The defendants denied that they or either of them had contracted to sell said bonds, or any portion of them, to Hanson & Sons, or ony other person, for less sum than the face value thereof, together with accrued interest from date, and alleged that they had advertised said bonds for sale, and that at the time and place stated Hanson & Sons, Incorporated, bid for $100,000 worth of said bonds at par value, together with accrued interest thereon to date of delivery, which bonds, were under the terms of said bid, to be delivered in installments. The defendant further alleged that advertisements for bids were made for said proposed road work to be done on said road district, according to plans, specifications, maps, and drawings, and that the bid of Hanson & Sons for the construction of said road work in the aggregate amounted to $25,000 less than any other bid received; that none of the proposed contracts had been executed, but were being prepared, and had been prepared for execution at the time the writ of injunction sued out in the case was served upon the defendants; that there was no agreement or any negotiation entered into by any of the defendants, neither would they, or either of them, entertain any proposition by which said bonds would be disposed of for less than their par value and accrued interest for cash, and that such cash was to be deposited in the treasurer's office for said county, and paid out in the manner required by law. They denied that the commissioners' court were attempting to contract for the building of said roads prior to the sale of said bonds, and that they requested all persons bidding upon the said work to also bid for the purchase of said bonds, and said that the only course contemplated by the said defendants was to provide for the sale of said bonds, as provided by law, and, after the same was effected, to enter into a contract for the work in the manner provided by law, and contingent upon the payment of the money for said bonds by the purchaser thereof, in compliance with the terms and conditions of the bid, and specially denied that there was any obligation on the bidders on said road work to purchase said bonds, or any portion thereof, and denied that there was any joint advertise-

ment for the sale of said bonds and bids for the proposed road work, but that said advertisements and offers were made separate and distinct from each other.

The motion to dissolve was heard upon the petition and answer and evidence introduced by both parties. The evidence shows that the original specifications sent out to prospective bidders for the road work contained the statement that the bidder would be required to accept bonds of the road district in payment for the work. Subsequently the commissioners' court decided that they were not authorized to contract to pay for the work by exchanging the bonds therefor, and the bidders were notified that their bids for the work should be made on a cash basis, and bids for the purchase of the bonds "made on separate form, and inclosed with said bid, and will become a contract separate and distinct from the construction of the work contemplated."

Mr. Jackson, in whose precinct the contemplated road work is to be done, testified:

"We did not require any bidders to bid for the bonds. You ask what is this wording in here if it *don't* require that, and I say I will explain it to you so you can understand it. We advertised one time—first time we advertised for bids —we advertised for them to take the bonds for work; we had quite a number of bids, and all turned down, and in making of other bids and specifications we used the same lot of old blanks, and that part of it was overlooked; at the time these blanks were sent out we did not discover this; the matter came up, and we discovered it. Mr. Bradburn, the engineer, notified all the parties in writing that had called for the specifications the bids must be separate, and the work must be let for cash."

P. E. Hanson, manager of Hanson & Sons, who made the bid for said corporation, testified:

"I did not understand when I bid for the work that I had to bid for the bonds; that was optional with me. I have been engaged in this character of work, loading, grading, handling dirt, making culverts, and things like that, since I was 9 years old—about 13 years. My business is construction, and I am not a bond buyer. I would not go out and buy bonds as an investment and speculation, as that is out of my line of business. I bid for these bonds and bid for them at the same time I submitted the bid for the work. If I had not bid on the bonds at all—if the money to do this work had been in the treasury of the county at the time I submitted my bid—I would not and could not have submitted a lower bid for the work. My statement is that my bid was submitted on a strictly cash basis. I had not done any work in this territory before, and was anxious to get in this territory, and for that purpose I was willing to assume the burden of buying $100,000 worth of bonds."

The testimony of the engineer, who prepared the plans and specifications for the work and examined and reported to the commissioners' court upon the bids submitted, is that the bid of Hanson & Sons is a low bid, $25,000 cheaper than any of the other bids received for the work, and 10 per cent. or 15 per cent. cheaper than was being paid for the same character of work by other counties. He also testified that said bid was within $145 of the estimate made by him of the cost of the work at the time he prepared the specifications.

The proposed contract for the sale of the bonds provides that they are to be issued in installments of $10,000, as the money is needed to pay for the work, and required the purchaser to pay into the treasury of the county in cash the par value and accrued interest of each installment of bonds delivered to him under said contract.

[1] It cannot be held upon this evidence that the trial judge erred in dissolving the temporary injunction. The law does not prohibit a county from selling bonds to contractors for public works for the construction of which the bonds are issued. The statute forbids the sale of bonds of this character for less than par value and accrued interest; and, if a contractor bids for both the work and bonds, and the evidence justifies the conclusion that the bid for the work is not made upon a cash basis, but fixed at an amount sufficiently in excess of what the work could be procured to be done for cash to recoup the contractor for a portion of the amount which he agrees to pay for the bonds, such bids should not be accepted, because this method of selling the bonds is a clear evasion of the statute, which forbids their sale for less than part and accrued interest. This was our holding in the case of Wilson v. Hebert, 174 S. W. 861, and we are satisfied of the soundness of our conclusion in that case.

[2] In the instant case, the evidence does not justify the conclusion that any evasion of the law will result if the contracts sought to be enjoined are carried out; on the contrary, the undisputed evidence shows that the bid for the work was made upon a cash basis and there is no evidence to justify the conclusion that the work could be procured to be done for a less amount. This being so, the county under the proposed contract for the sale of the bonds will receive in cash the par value of the bonds with accrued interest, and the execution of the contracts cannot be enjoined upon the ground upon which the holding in the Wilson Case is based.

This conclusion requires that the order dissolving the temporary injunction be affirmed; and it has been so adjudged.

Affirmed.