[L. A. No. 13919. In Bank.—March 16, 1933.]

ELMER J. KENNEDY, Appellant, v. H. McINTURFF, Treasurer, etc., Respondent.

K. B. Kennicott for Appellant.

Clarence H. Wilson, District Attorney, for Respondent.

SHENK, J.—This is an appeal from a judgment for the respondent in a *mandamus* proceeding brought to compel the treasurer of the Stratford Public Utility District in Kings County to pay a warrant in the sum of $1625 drawn on the order of the board of directors of the district, and payable to the petitioner.

The cause was submitted to the trial court on an agreed statement of facts from which it appears that the Stratford Public Utility District was organized and is functioning under the act of 1921 (Stats. 1921, p. 906). Under the act the respondent county treasurer is made the acting treasurer of the district and the custodian of its funds. The district is governed by a board of directors.

On August 11, 1930, the electors of the district authorized the issuance of bonds in the sum of $30,000 for the acquisition, construction and completion of a waterworks system for the distribution of water within the district. The board

of directors made several unsuccessful attempts to sell the bonds. On October 10, 1930, the petitioner addressed a letter to the board of directors, wherein he offered to find a purchaser for said bonds at par and accrued interest. The offer was in consideration of the payment to him of a commission in the sum of $1625. The offer was accepted by the board on the day of its receipt.

The petitioner produced a purchaser to whom the bonds were sold at par and accrued interest, and presented a demand for the commission. The board approved the demand and a warrant was drawn on the general fund of the district in payment thereof. The respondent county treasurer refused payment on the ground that the expenditure was not authorized by law.

It also appears from the agreed statement of facts that the work and improvement contemplated by the issuance of said bonds has been completed and has been paid for in full; that there still remains from the sale of said bonds sufficient money in the hands of the treasurer to pay said warrant, and that the amount demanded is a reasonable amount to be paid as commission if one be authorized.

Section 32 of the act authorizing the creation of the district provides that the bonds of the district "may be sold by the board of directors at such times and in such manner as they shall determine, but shall not be sold at less than par and accrued interest. . . . The proceeds from the sale of bonds shall be placed in the treasury to the credit of the proper fund, and shall be applied exclusively to the purposes and objects mentioned in the ordinance authorizing their issue until such objects are fully accomplished; after which, if any surplus remains, such surplus may be transferred to the general fund; except that if such surplus exceeds the sum of five thousand dollars, then such surplus and the whole thereof shall be transferred to the appropriate fund or funds to pay interest and maintain the sinking fund, or provide for the retirement of the bonded indebtedness in connection with which such surplus remains".

The exact amount of the surplus remaining after the completion of the work is not shown, but we think it appears by a reasonable, and in fact a necessary, inference from the stipulated fact that there still remains from the sale of said bonds sufficient money to pay said warrant, and from the

unquestioned fact that the warrant is drawn on the general fund of the district, that there was a surplus and that the surplus was not more than $5,000. The presumption of official duty regularly performed would admit of no other conclusion, and since the purposes of the bond issue have been fully accomplished, the money sought to be expended to pay the warrant must be deemed to be a part of the general fund of the district.

We are not impressed by the argument of counsel for the respondent that the payment of the commission under the circumstances here shown would result in a sale of the bonds at less than par and accrued interest. The entire proceeds from the sale of said bonds were available for the purposes of their issuance and the amount thereof was not diminished by reason of the contract to pay the commission. The transaction did not contemplate a commission or rebate to the purchaser of the bonds. Nor was it tainted with an overbid on the part of the contractor so as to bring the sale within the rule applied by the courts of this and other states to conduct amounting to a subterfuge to defeat the terms of the statute. (*Appeal of Whelen,* 108 Pa. St. 162 [1 Atl. 88] ; *Hunter* v. *County of Santa Barbara,* 110 Cal. App. 698 [294 Pac. 1082] ; *Ogg* v. *Dies,* (Tex. Civ. App.) 176 S. W. 638.) The commission here sought to be enforced was to be paid to a third party who agreed to and did bring about a sale of the bonds at the lawful price.

The express powers of the board of directors in the premises are found in the following provisions of the act: Section 30 provides that any such public utility district shall have power ''Fifth—to acquire, conduct, own, operate, control or use . . . works for supplying the inhabitants of said district with light, water, power, heat, transportation . . . ; and to do all things necessary or convenient to the full exercise of the powers hereby granted. . . . Eighth—to borrow money and incur indebtedness, and to issue bonds or other evidences of indebtedness . . . Tenth—to make contracts, to employ labor, and to do all acts necessary and convenient for the full exercise of the powers herein in this act granted.''

Section 44 provides that ''The board of directors may from time to time contract for or employ any professional services required by the district, or by the board, or any officer of the district.'' And section 45 provides: ''The board of

directors or other officers of the district shall have no power to incur any debt or liability whatever, either by issuing bonds or otherwise, in excess of the express provisions of this act, and any debt or liability incurred in excess of such express provisions shall be and remain absolutely void.''

It is the position of the respondent that the provisions of said section 45 foreclose the question against the petitioner for the reason that there is no express authority in the act for the employment of the petitioner or for incurring the liability for his services; and that the provisions of subdivisions ''fifth'' and ''tenth'' of section 30 of the act granting the board power ''to do all acts necessary and convenient for the full exercise of the powers hereby granted'' are not sufficient to repose such authority in the board. The respondent's principal reliance in this regard is the case of *Smith* v. *County of Los Angeles,* 99 Cal. 628 [34 Pac. 439]. In that case it appeared that the board of supervisors of the county had employed the plaintiff to procure an acceptable bidder for bonds theretofore authorized by the electors of the county for the construction of a county courthouse. The services contracted for were performed by the plaintiff, payment therefor was refused and he sued for the conceded reasonable value thereof. The question was whether it was within the express power of the board of supervisors to sell the bonds, and if so whether the board had the additional power to contract for and pay the commission under the provisions of subdivision 35 of section 25 of the County Government Act as it then stood (Act of March 14, 1883; Stats. 1883, p. 299), providing that the board of supervisors should have power ''to do and perform all other acts and things required by law not in this act enumerated, or which may be necessary to the full discharge of the duties of the legislative authority of the county government''. The trial court entered judgment for the defendant county. The judgment was affirmed. It was properly held in that case that the board of supervisors had no express authority to sell the bonds. Indeed the express power to sell them was conferred by statute on the county treasurer; consequently there was no power in or duty imposed on the board which could be aided by the above-quoted provision of the County Government Act.

Here the board of directors was granted the express power to sell the bands. It is assumed that the operation of those portions of subdivisions ''fifth'' and ''tenth'' of section 30 of the act now before us vesting power in the board of directors ''to do all things necessary or convenient to the full exercise of the powers hereby granted'', should be confined to the exercise by the board of such powers as are otherwise expressly granted by the act. When so confined the action taken thereunder is in pursuance of express authority. In other words, the board had express authority to sell the bonds; the board had express authority to do all acts necessary and convenient for the full exercise of the power to sell; and the board had express authority to transfer the excess in this case to the general fund.

It may be reasonably inferred from the fact that the contract was made that the board of directors, after previous unsuccessful efforts to sell the bonds, were pressed with the necessity of disposing of the same at the earliest practicable time; that the efforts of the board of directors to sell the bonds without the aid of a broker had proved futile and that such aid was necessary. The question of the reasonableness of the commission is removed from the case by the stipulation of facts.

Numerous cases in other states have approved the employment of a broker to negotiate the sale of public bonds where such employment appeared to be necessary and the agreement to pay the commission was executed in good faith by the public authority having the power and duty to sell the bonds. (*Mayor etc. of New York* v. *Sands*, 105 N. Y. 210 [11 N. E. 820]; *Armstrong* v. *Village of Ft. Edward*, 159 N. Y. 315 [53 N. E. 1116]; *Matter of Sage* v. *Broderick*, 255 N. Y. 19 [173 N. E. 908].) The last case cited referred to the case of *Smith* v. *County of Los Angeles*, 99 Cal. 628 [34 Pac. 439], and other cases relied upon by the respondent herein and held them inapplicable for the reason that it appeared that the statutory law was not followed. The cases approving the employment of a broker to sell public bonds limit the right to do so to instances where the power to sell the bonds is expressed in the statute and when there is no express provision against the employment, on the theory that the power to sell the bonds carries with it the implied power to do whatever is reasonably necessary to bring about the

sale, including the employment of a broker. ▮ What is declared to be a necessarily implied power in other states, that is, the implied power to do all things necessary to carry out other powers expressly granted, is an express power under our statute. In Pennsylvania the statute specifically authorizes such employment (*Appeal of Whelen, supra*), and when the statute specifies the mode of advertisement and sale such mode is mandatory. (*Consolidated School Dist.* v. *Union Trust Co.*, 124 Wash. 501 [215 Pac. 28].)

We conclude that the power to pay the petitioner's commission under the facts of this case is included within the statute, and that the cases relied on by the respondent are not in point.

The judgment is reversed.

Seawell, J., Thompson, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.